# Federal Reserve Statistical Release



## H.15
## Selected Interest Rates (Daily)

Skip to Content
*Release Date: November 26, 2004*
Weekly release dates and announcements | Historical data | About
Daily update  *Other formats:* Screen reader | ASCII

The weekly release is posted on Monday. Daily updates of the weekly release are posted Tuesday throug

```
H.15 DAILY UPDATE: WEB RELEASE ONLY            For immediate release
SELECTED INTEREST RATES                            November 26, 2004

Yields in percent per annum
                                                                        *
                                          2004    2004    2004    2004
                                          Nov     Nov     Nov     Nov
 Instruments                               22      23      24      25

 Federal funds (effective) 1 2 3          2.01    2.00    2.02    2.02
 Commercial paper 3 4 5
    Nonfinancial
       1-month                            2.06    2.06    2.07
       2-month                            2.13    2.18
       3-month                            2.23    2.22
    Financial
       1-month                            2.06    2.07    2.08
       2-month                            2.16    2.21    2.22
       3-month                            2.26            2.27
 CDs (secondary market) 3 6
       1-month                            2.11    2.16    2.16
       3-month                            2.32    2.34    2.34
       6-month                            2.54    2.55    2.55
 Eurodollar deposits (London) 3 7
       1-month                            2.09    2.10    2.11
       3-month                            2.28    2.31    2.31
       6-month                            2.48    2.51    2.52
 Bank prime loan 2 3 8                    5.00    5.00    5.00    5.00
 Discount window primary credit 2 9       3.00    3.00    3.00    3.00
 U.S. government securities
    Treasury bills (secondary market) 3 4
       4-week                             1.93    1.96    1.95
       3-month                            2.16    2.13    2.14
       6-month                            2.37    2.35    2.34
    Treasury constant maturities
       Nominal 10
          1-month                         1.98    1.99    1.98
          3-month                         2.20    2.19    2.18
          6-month                         2.43    2.41    2.40
          1-year                          2.60    2.60    2.60
          2-year                          2.95    2.98    3.01
          3-year                          3.18    3.20    3.23
          5-year                          3.56    3.58    3.61
          7-year                          3.90    3.92    3.93
          10-year                         4.18    4.19    4.20
```

```
        20-year 11                        4.85   4.85   4.85
     Inflation-indexed 12
        5-year                            0.89   0.93   0.93
        7-year                            1.23   1.26   1.26
       10-year                            1.62   1.65   1.64
       20-year                            2.01   2.04   2.03
     Inflation-indexed
       long-term average 13               2.08   2.04   2.04
  Interest rate swaps 14
     1-year                               2.93   2.94   2.95
     2-year                               3.32   3.34   3.34
     3-year                               3.57   3.58   3.58
     4-year                               3.78   3.78   3.79
     5-year                               3.96   3.97   3.96
     7-year                               4.27   4.26   4.26
    10-year                               4.59   4.57   4.57
    30-year                               5.22   5.18   5.18
  Corporate bonds
     Moody's seasoned
        Aaa 15                            5.44   5.45
        Baa                               6.14   6.15
  State & local bonds 16                                        4.53
  Conventional mortgages 17                                     5.72
  ---------
  See overleaf for footnotes
  * Markets closed
```

                              FOOTNOTES

  1. The daily effective federal funds rate is a weighted average of
     rates on brokered trades.
  2. Weekly figures are averages of 7 calendar days ending on Wednesday
     of the current week; monthly figures include each calendar day in
     the month.
  3. Annualized using a 360-day year or bank interest.
  4. On a discount basis.
  5. Interest rates interpolated from data on certain commercial paper
     trades settled by The Depository Trust Company.  The trades
     represent sales of commercial paper by dealers or direct
     issuers to investors (that is, the offer side).  The 1-,
     2-, and 3-month rates are equivalent to the 30-, 60-, and
     90-day dates reported on the Board's Commercial Paper Web page
     (www.federalreserve.gov/releases/cp).
  6. An average of dealer offering rates on nationally traded certificates of depos
  7. Bid rates for Eurodollar deposits collected around 9:30
     a.m. Eastern time.
  8. Rate posted by a majority of top 25 (by assets in domestic
     offices) insured U.S.-chartered commercial banks.  Prime is one
     of several base rates used by banks to price short-term business
     loans.
  9. The rate charged for discounts made and advances extended under
     the Federal Reserve's primary credit discount window program, which
     became effective January 9, 2003. This rate replaces that for
     adjustment credit, which was discontinued after January 8, 2003.  For
     further information, see

```
             www.federalreserve.gov/boarddocs/press/bcreg/2002/200210312/default.htm.
             The rate reported is that for the Federal Reserve Bank of New
             York.  Historical series for the rate on adjustment credit is
             available at www.federalreserve.gov/releases/h15/data.htm.
    10.      Yields on actively traded non-inflation-index issues adjusted to
             constant maturities.  Source: U.S.  Treasury.
    11.      A factor for adjusting the daily nominal 20-year constant maturity in
             order to estimate a 30-year rate can be found at
             www.treas.gov/offices/domestic-finance/debt-management/interest-rate/ltcomposi
    12.      Yields on Treasury inflation protected securities (TIPS)
             adjusted to constant maturities.  Source: U.S.  Treasury.
             Additional information on both nominal and inflation-indexed
             yields may be found at
             www.treas.gov/offices/domestic-finance/debt-management/interest-rate/index.htm
    13.      Based on the unweighted average bid yields for all Inflation
             Protected Securities with remaining terms to maturity of more than
             10 years.
    14.      International Swaps and Derivatives Association (ISDA(R)) mid-market
             par swap rates.  Rates are for a Fixed Rate Payer in return for
             receiving three month LIBOR, and are based on rates collected at
             11:00 a.m. Eastern time by Garban Intercapital plc and published
             on Reuters Page ISDAFIX(R)1.  ISDAFIX is a registered service mark
             of ISDA.  Source: Reuters Limited.
    15.      Moody's Aaa rates through December 6, 2001 are averages of Aaa
             utility and Aaa industrial bond rates.  As of December 7, 2001,
             these rates are averages of Aaa industrial bonds only.
    16.      Bond Buyer Index, general obligation, 20 years to maturity, mixed
             quality; Thursday quotations.
    17.      Contract interest rates on commitments for fixed-rate first
             mortgages.  Source:  FHLMC.


             DESCRIPTION OF THE TREASURY NOMINAL AND INFLATION-INDEXED
                             CONSTANT MATURITY SERIES

    Yields on Treasury nominal securities at "constant maturity" are
    interpolated by the U.S. Treasury from the daily yield curve for
    non-inflation-indexed Treasury securities. This curve, which relates
    the yield on a security to its time to maturity, is based on the
    closing market bid yields on actively traded Treasury securities in
    the over-the-counter market. These market yields are calculated from
    composites of quotations obtained by the Federal Reserve Bank of New
    York. The constant maturity yield values are read from the yield curve
    at fixed maturities, currently 1, 3 and 6 months and 1, 2, 3, 5, 7, 10
    and 20 years. This method provides a yield for a 10-year maturity, for
    example, even if no outstanding security has exactly 10 years remaining
    to maturity.  Similarly, yields on inflation-indexed securities at
    "constant maturity" are interpolated from the daily yield curve for
    Treasury inflation protected securities in the over-the-counter market.
    The inflation-indexed constant maturity yields are read from this yield
    curve at fixed maturities, currently 5, 7, 10, and 20 years.
```

Weekly release dates and announcements | Historical data | About
Daily update  *Other formats:* Screen reader | ASCII

Statistical releases

**Last update: November 26, 2004**

LEXSEE 2001 U.S. DIST. LEXIS 24268

KINGVISION PAY-PER-VIEW, LTD, as Broadcast Licensee of the March 7, 1998, Chavez/Gonzalez Program, v. JAVIER VALLES, Individually and d/b/a BOBBY'S PLACE and BOBBY'S PLACE, CYNTHIA VENEGAS, Individually and d/b/a CIN DEE LOO'S and CIN DEE LOO'S, BLANCA E. MARINELARENA, Individually and d/b/a ELBOW ROOM and ELBOW ROOM, "JOHN DOE," said name being fictitious, the true names being unknown to plaintiff, Individually and d/b/a EMMA & MICKEY'S and EMMA & MICKEY'S, MANUEL RAMIREZ, Individually and d/b/a PALACE BAR and PALACE BAR, NORBERTO HORNEDO GONZALEZ, Individually and d/b/a TITO'S BAR & GRILL and TITO'S BAR & GRILL, MANUEL HERNANDEZ, Individually and d/b/a NERO'S COCKTAIL LOUNGE a/k/a NERO'S GENTLEMEN'S CLUB a/k/a NERO'S and NERO'S COCKTAIL LOUNGE a/k/a NERO'S GENTLEMEN'S CLUB a/k/a NERO'S, BERTHA ALICIA RODRIGUEZ, individually and d/b/a ESPY'S II a/k/a ESPY'S LOUNGE and ESPY'S II a/k/a ESPY'S LOUNGE

EP-00-CA-179-DB

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, EL PASO DIVISION

2001 U.S. Dist. LEXIS 24268

March 30, 2001, Decided

**DISPOSITION:** Plaintiff's motion for default judgment granted, and judgment entered in favor of the plaintiff and against the defendants who faile dto respond to the summons and complaint.

**LexisNexis(R) Headnotes**

**COUNSEL:** For KINGVISION PAY-PER-VIEW, LTD., plaintiff: Julie Cohen Lonstein, Lonstein Law Office, Ellenville, NY.

For BLANCA E. MARINELARENA, defendant: Mark G. Briggs, Attorney at Law, El Paso, TX.

For MANUEL HERNANDEZ, NERO'S COCKTAIL LOUNGE, defendants: John G. Mundie, Miranda & Boyaki, El Paso, TX.

**JUDGES:** HONORABLE DAVID BRIONES, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** DAVID BRIONES

**OPINION:**

DEFAULT JUDGMENT

On this day, the Court considered Plaintiff Kingvision Pay-Per-View, Ltd.'s "Motion for Default," "Affidavit in Support of Request for Default" and "Statement for Judgment," all [*2] filed on March 19, 2001, in the above-captioned cause.

Through the instant motion and supporting documents, Plaintiff moves for default judgment against Defendants Javier Valles, individually and doing business as Bobby's Place, as well as Bobby's Place; Cynthia Venegas, individually and d/b/a Cin Dee Loo's as well as Cin Dee Loo's; John Doe, said name being fictitious, the true name being unknown to Plaintiff, individually and d/b/a Emma & Mickey's as well as Emma and Mickey's; Manuel Ramirez, individually and d/b/a Palace Bar as well as Palace Bar; Norberto Hornedo Gonzalez, individually and d/b/a Tito's Bar & Grill as well as Tito's Bar & Grill; and Bertha Alicia Rodriguez, individually and d/b/a Espy's II a/k/a Espy's Lounge as well as Espy's II a/k/a Espy's Lounge. Defendants named therein filed no responses.

Background

Plaintiff, by contract, owned commercial rights to distribute, for a fee, the televised version of the professional boxing match between Julio Cesar Chavez and Miguel Gonzalez, which took place on March 7, 1998, via closed circuit television. Plaintiff alleges that Defendants, without purchasing the right to intercept and exhibit the encrypted signal, [*3] nonetheless exhibited the boxing match.

On the day of the match, Plaintiff employed investigators whom it supplied with lists of locations within Texas authorized to exhibit the program. Investigators were to visit, during the transmission of the boxing match, locations not named on the list and later submit affidavits verifying the exhibition of the boxing program at locations not authorized to so exhibit. The investigators subsequently submitted affidavits alleging that the boxing match was exhibited at the commercial establishments named in this cause of action.

Plaintiff commenced this action on June 12, 2000, alleging Defendants unlawfully intercepted and exhibited commercially Plaintiff's satellite cable programming, in violation of Section 705 of the Communications Act of 1934, 47 U.S.C. § 605 ("the Communications Act"). Plaintiff contends that Defendants intercepted the satellite signal and displayed the program willfully and for the purpose of direct or indirect commercial advantage or private financial gain. Accordingly, Plaintiff seeks statutory damages, an increase in the award by $100,000 for willful violation of 47 U.S.C. § 605(a), [*4] as well as costs and reasonable attorney's fees. Although Plaintiff duly served copies of a summons and the Complaint on all Defendants, six of the Defendants have failed to appear, answer or otherwise defend against the Complaint.

**Discussion**

Plaintiff moves for default judgment as to those six Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2), which provides that a party entitled to a default judgment may apply to the Court therefor. Plaintiff seeks maximum statutory damages in the amount of $10,000, increased by $100,000 for willful violation of 47 U.S.C. § 605(a). In general, statutory damages should not be awarded by default judgment unless the Court has a hearing or is provided with detailed affidavits establishing the necessary facts and that the amount claimed is a liquidated sum or one capable of mathematical calculation. n1 *See United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979). Statutory damage awards serve both a compensatory and punitive function. Hence, "in making a statutory award, the court may consider the likelihood of profits and losses and may take into account the attitude and conduct [*5] of the parties." *Warner Bros. Inc., v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1126 (2d Cir. 1989) (copyright infringement case).

n1 The Court finds that a hearing in this case is unnecessary given the ample supporting documents and affidavits supplied by Plaintiff.

Title 47 U.S.C. § 605 prohibits the unauthorized publication of any intercepted radio communication, including satellite cable programming. Section 605(a) provides:

No person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed . or authorized to forward such communication to its destination . . . .

47 U.S.C.A. § 605(a) (West 1991). The statute's [*6] prohibition of the unauthorized interception and disclosure of *radio* communications is also applicable to communications transmitted by means of new technology, including domestic satellite transmissions. *See, e.g., United States v. Herring,* 933 F.2d 932, 937 (11th Cir. 1991).

Under the Communications Act, an aggrieved party has a private right of action for injuries arising from violation of § 605. *See* 47 U.S.C.A. § 605(e)(3)(A) (West 1991). The Court may award statutory damages for each violation in a sum of not less than $1,000 or more than $10,000, "as the court considers just." *Id.* § 605(e)(3)(C)(i)(II). If the Court finds that the violation was committed willfully and for purposes of commercial advantage, the Court in its discretion may increase the award of damages in an amount not to exceed $100,000 for each violation. *See id.* § 605(e)(3)(C)(ii).

The Supreme Court has defined "willful" in the context of civil statutes as conduct showing "disregard for the governing statute and an indifference to its requirements," *TransWorld Airlines, Inc. v. Thurston,* 469 U.S. 111, 127, 105 S. Ct. 613, 625, 625, 83 L. Ed. 2d 523 (1985), [*7] and courts have interpreted the Communications Act consistently with that definition. *See, e.g., ON/TV of Chicago v. Julien,* 763 F.2d 839, 844 (7th Cir. 1985) (interpreting "willfulness" under § 605 as defined in *TransWorld Airlines*). For purposes of § 605, courts have found conduct "willful" where there were repeated violations over a period of time, or where there was a sophisticated knowledge of the satellite programming industry and violation of the statutes which regulate it. *See, e.g., Cable/Home Communication Corp. v. Network Prods. Inc.,* 902 F.2d 829, 851 (11th Cir. 1990); *Home Box Office v. Champs of New Haven, Inc.,* 837 F. Supp. 480, 484 (D. Conn. 1993).

Here, although Plaintiff asks for maximum damages, the Court finds that awarding the highest statutory damages is inappropriate as to all Defendants. Plaintiff has provided no documentation or other competent evidence

2001 U.S. Dist. LEXIS 24268, *7

showing any significant actual damages or, conversely, substantial unlawful monetary gains by Defendants. The caselaw suggests that under similar circumstances and in the absence of egregious violations, courts have refused to award the highest possible [*8] damages. *See, e.g., Home Box Office,* 837 F. Supp. at 484 (holding that under the Communications Act and Copyright Act, maximum statutory damages in amount of $250,000 imposed on owner of sports bar was excessive and would be reduced to $10,000 where there were no allegations of repeated violations, substantial gains by defendants or significant actual damages to the plaintiff); *see also Joe Hand Promotions v. Burg's Lounge,* 955 F. Supp. 42 (E.D. Pa. 1997) (holding that in the absence of evidence suggesting especially egregious circumstances under which tavern owners exhibited copyright broadcast of heavyweight boxing fight without authorization, $20,000 damage award was unwarranted). The Court finds that the appropriate amount of statutory damages under the circumstances presented is $2,000 as to each Defendant.

Plaintiff also seeks damages based on Defendants' "committing [the alleged act] willfully and for purposes of direct or indirect commercial advantage or private financial gain," pursuant to § 605(e)(3)(C)(ii). Given that all Defendants exhibited the boxing match in commercial establishments, they were sure to benefit financially from [*9] the unauthorized interception of the satellite transmission. Moreover, the Court finds that an award under this section of the statute is warranted insofar as Defendants acted in disregard or with indifference to the governing laws. While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that there must have been some knowledge on the part of Defendants that such interception could not be had for free. The Court, however, is unwilling to make an award at the statutory maximum of $100,000. All six Defendants at issue here run small establishments and, as noted above, likely are not familiar with statutory requirements of satellite broadcasting. *Cf. Network Prods. Inc.,* 902 F.2d at 851 (awarding $20,000 for multiple, willful violations of Copyright Act and $110,000 for separate willful violations of the Communications Act where the defendant flagrantly violated statutory requirements with which he was familiar given his knowledge of the industry). In this case, the Court is of the opinion that an increase of $10,000 appropriately penalizes Defendants for willful violation [*10] without putting them out of business.

Plaintiff also seeks $1,500 per Defendant as reasonable attorney fees, the total sum based on an hourly rate of $150. Additionally, Plaintiff seeks to recover the costs of bringing suit, which include a $275 investigator fee,

a $25 filing fee and a $160 process-server fee for each Defendant. The Court finds this accounting reasonable and is of the opinion that Plaintiff is entitled to such an award. *See, e.g., Time Warner Cable of New York City v. Olmo,* 977 F. Supp. 585 (E.D.N.Y. 1997) (awarding prevailing party, a cable television operator, reasonable costs and attorney fees in the amount of $1,586 based on hourly rates ranging from $110 to $190). Plaintiff also requests pre-judgment interest at the rate of 6% per annum as compensation for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment. Plaintiff finally requests post-judgment interest at the legal rate in effect at the time of entry of Judgment. The Court is of the opinion that Plaintiff's request is reasonable and agrees to the proposed amounts. *See Williams v. Trader Publ'g. Co.,* 218 F.3d 481, 488 (5th Cir. 2000) [*11] (holding that "[a] district court has discretion to impose a pre-and post-judgment interest award to make a plaintiff whole" at the rate determined by the court); *see also Hansen v. Continental Ins. Co.,* 940 F.2d 971, 984 (5th Cir. 1991) (holding that "it is within the discretion of the district court to select an equitable rate of prejudgment interest.").

Accordingly, after due consideration, the Court is of the opinion that the following orders should enter:

**IT IS HEREBY ORDERED AND ADJUDGED** that Plaintiff Kingvision Pay-Per-View Ltd.'s Motion for Default Judgment is **GRANTED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Default Judgment is **ENTERED** in favor of Plaintiff and against Defendant Javier Valles, individually and doing business as Bobby's Place, as well as Bobby's Place as follows: (1) statutory damages in the amount of $2,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) additional damages in the amount of $10,000 for "committing [the alleged act] willfully and for purposes of direct or indirect commercial advantage or private financial gain," pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); [*12] (3) interest at the rate of 6% per annum on the sum of $2,000 from the 7th day of March, 1998, to the date of entry of this Judgment; (4) $1,500 as reasonable attorney's fees; (5) costs related to prosecution of this matter totaling $460; and (6) post-judgment interest thereon at the rate of 4.17 % per annum.

**IT IS FURTHER ORDERED AND ADJUDGED** that Default Judgment is **ENTERED** in favor of Plaintiff and against Defendant Cynthia Venegas, individually and d/b/a Cin Dee Loo's, as well as Cin Dee Loo's as follows: (1) statutory damages in the amount of $2,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) additional damages in the amount of $10,000 for "committing [the alleged act] willfully and for purposes of direct or indirect commercial advantage or private financial gain," pursuant to

47 U.S.C. § 605(e)(3)(C)(ii); (3) interest at the rate of 6% per annum on the sum of $2,000 from the 7th day of March, 1998, to the date of entry of this Judgment; (4) $1,500 as reasonable attorney's fees; (5) costs related to prosecution of this matter totaling $460; and (6) post-judgment interest thereon at the rate of 4.17% per [*13] annum.

IT IS FURTHER ORDERED AND ADJUDGED that Default Judgment is ENTERED in favor of Plaintiff and against Defendant "John Doe," said name being fictitious, the true names being unknown to Plaintiff, individually and d/b/a Emma & Mickey's, as well as Emma & Mickey's as follows: (1) statutory damages in the amount of $2,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) additional damages in the amount of $10,000 for "committing [the alleged act] willfully and for purposes of direct or indirect commercial advantage or private financial gain," pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); (3) interest at the rate of 6% per annum on the sum of $2,000 from the 7th day of March, 1998, to the date of entry of this Judgment; (4) $1,500 as reasonable attorney's fees; (5) costs related to prosecution of this matter totaling $460; and (6) post-judgment interest thereon at the rate of 4.17% per annum.

IT IS FURTHER ORDERED AND ADJUDGED that Default Judgment is ENTERED in favor of Plaintiff and against Defendant Manuel Ramirez, individually and d/b/a Palace Bar, as well as Palace Bar as follows: (1) statutory damages [*14] in the amount of $2,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) additional damages in the amount of $10,000 for "committing [the alleged act] willfully and for purposes of direct or indirect commercial advantage or private financial gain," pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); (3) interest at the rate of 6% per annum on the sum of $2,000 from the 7th day of March, 1998, to the date of entry of this Judgment; (4) $1,500 as reasonable attorney's fees; (5) costs related to prosecution of this matter totaling $460; and (6) post-judgment interest thereon at the rate of 4.17% per annum.

IT IS FURTHER ORDERED AND ADJUDGED that Default Judgment is ENTERED in favor of Plaintiff and against Defendant Norberto Hornedo Gonzalez, individually and d/b/a Tito's Bar & Grill, as well as Tito's Bar & Grill as follows: (1) statutory damages in the amount of $2,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) additional damages in the amount of $10,000 for "committing [the alleged act] willfully and for purposes of direct or indirect commercial advantage or private financial gain," pursuant to [*15] 47 U.S.C. § 605(e)(3)(C)(ii); (3) interest at the rate of 6% per annum on the sum of $2,000 from the 7th day of March, 1998, to the date of entry of this Judgment; (4) $1,500 as reasonable attorney's fees; (5) costs related to prosecution of this matter totaling $460; and (6) post-judgment interest thereon at the rate of 4.17% per annum.

IT IS FINALLY ORDERED AND ADJUDGED that Default Judgment is ENTERED in favor of Plaintiff and against Defendant Bertha Alicia Rodriguez, individually and d/b/a Espy's II a/k/a Espy's Lounge, as well as Espy's II a/k/a Espy's Lounge as follows: (1) statutory damages in the amount of $2,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) additional damages in the amount of $10,000 for "committing [the alleged act] willfully and for purposes of direct or indirect commercial advantage or private financial gain," pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); (3) interest thereon at the rate of 6% per annum on the sum of $2,000 from the 7th day of March, 1998, to the date of entry of this Judgment; (4) $1,500 as reasonable attorney's fees; (5) costs related to prosecution [*16] of this matter totaling $460; and (6) post-judgment interest thereon at the rate of 4.17% per annum.

SIGNED this 30th day of March, 2001.

THE HONORABLE DAVID BRIONES

UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
FEB 08 2001
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

| | |
|---|---|
| PROSTAR, as Broadcast Licensee of the December 6, 1997, DeLaHoya/Rivera Program, § § § § | |
| v. § § | EP-00-CA-161-DB |
| JAVIER VALLES, Individually, d/b/a BOBBY'S PLACE, and BOBBY'S PLACE § § § § | |
| FELICIANO VALDEZ and MARIA RIVERA, Individually, d/b/a JOCKEY LOUNGE, and JOCKEY LOUNGE § § § § | |
| WILLIAM E. DAHLBERG, Individually, and as officer, director, shareholder and/or principal of YELLOW ROSE RESTAURANTS, INC. d/b/a THE MINE SHAFT, and YELLOW ROSE RESTAURANTS, INC. d/b/a THE MINE SHAFT. § § § § § § § § | |

## DEFAULT JUDGMENT

On this day, the Court considered Plaintiff Prostar's "Motion for Default," "Affidavit in Support of Request for Default," "Statement for Judgment," and "Motion for Permission to Appear Telephonically at the Pretrial Conference and Default Hearing Scheduled for February 15, 2001," all filed on January 29, 2001, in the above-captioned cause. Defendants filed no responses.

Through the instant motions and supporting documents, Plaintiff moves for default judgment against Defendants Javier Valles, individually and doing business as Bobby's Place, as well as Bobby's Place; Feliciano Valdez and Maria Rivera, individually and doing

19

business as Jockey Lounge, as well as Jockey Lounge; and William E Dahlberg, individually, and as an officer, director, shareholder and/or principal of Yellow Rose Restaurants, Inc, doing business as The Mine Shaft, as well as Yellow Rose Restaurants, Inc, doing business as The Mine Shaft. After due consideration, the Court is of the opinion that the Motion for Default should be granted as provided below Additionally, because the Court finds that no hearing is needed in this cause, Plaintiff's "Motion for Permission to Appear Telephonically at the Pretrial Conference and Default Hearing Scheduled fro February 15, 2001," should be denied as moot

## Background

Plaintiff, by contract, owned commercial rights to distribute, for a fee, the televised version of the professional boxing match between Oscar DeLaHoya and Wilfredo Rivera, which took place on December 6, 1997, via encrypted satellite signal Plaintiff alleges that Defendants, without purchasing the right to intercept and exhibit the encrypted signal, nonetheless exhibited the boxing match

On the day of the match, Plaintiff employed investigators whom it supplied with lists of locations within Texas authorized to exhibit the program Investigators were to visit, during the transmission of the boxing match, commercial establishment not named on the list and later submit affidavits verifying the exhibition of the boxing program at locations not authorized to so exhibit Three investigators subsequently submitted affidavits alleging that the boxing match was exhibited at all three commercial establishments named in this cause of action, and that one establishment, The Mine Shaft, charged customers a $10 00 entry fee (a "cover charge")

Plaintiff commenced this action on May 30, 2000, alleging Defendants unlawfully intercepted and exhibited commercially Plaintiff's satellite cable programming, in violation of

2

Section 705 of the Communications Act of 1934, 47 U S C § 605 ("the Communications Act") Plaintiff contends that Defendants intercepted the satellite signal and displayed the program willfully and for the purpose of direct or indirect commercial advantage or private financial gain Accordingly, Plaintiff seeks statutory damages for willful violation of 47 U S C § 605, as well as costs and reasonable attorney's fees Although Plaintiff duly served copies of a summons and the Complaint on all Defendants, Defendants have failed to appear, answer or otherwise defend against the Complaint.

### Discussion

Plaintiff moves for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), which provides that a party entitled to a default judgment may apply to the Court therefor Plaintiff seeks maximum statutory damages in the amount of $110,000, for willful violation of 47 U S C § 605(a) In general, statutory damages should not be awarded by default judgment unless the Court has a hearing or is provided with detailed affidavits establishing the necessary facts and that the amount claimed is a liquidated sum or one capable of mathematical calculation [1] *See United Artists Corp v Freeman*, 605 F 2d 854, 857 (5th Cir 1979) Statutory damage awards serve both a compensatory and punitive function Hence, "in making a statutory award, the court may consider the likelihood of profits and losses and may take into account the attitude and conduct of the parties." *Warner Bros Inc, v. Dae Rim Trading, Inc*, 877 F 2d 1120, 1126 (2d Cir 1989) (copyright infringement case)

---

[1] The Court finds that a hearing in this case is unnecessary given the ample supporting documents and affidavits supplied by Plaintiff

3

Title 47 U S C § 605 prohibits the unauthorized publication of any intercepted radio communication, including satellite cable programming Section 605 (a) provides

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination

47 U S C A § 605 (West 1991) The statute's prohibition of the unauthorized interception and disclosure of *radio* communications is also applicable to communications transmitted by means of new technology, including domestic satellite transmissions See, e g , *United States v. Herring*, 933 F.2d 932, 937 (11th Cir 1991)

Under the Communications Act, an aggrieved party has a private right of action for injuries arising from violation of § 605 See 47 U S C § 605(e)(3)(A) (West 1991) The Court may award statutory damages for each violation in a sum of not less than $1,000 or more than $10,000, "as the court considers just" Id § 605(e)(3)(C)(i)(II) If the Court finds that the violation was committed willfully and for purposes of commercial advantage, the Court in its discretion may increase the award of damages in an amount not to exceed $100,000 for each violation See id § 605(e)(3)(C)(ii) The Supreme Court has defined "willful" in the context of civil statutes as conduct showing "disregard for the governing statute and an indifference to its requirements," *TransWorld Airlines, Inc v. Thurston*, 469 U S 111, 127, 105 S Ct 613, 625, 625, 83 L Ed 2d 523 (1985), and courts have interpreted the Communications Act consistently with that definition See, e g , *ON/TV of Chicago v Julien*, 763 F 2d 839, 844 (7th Cir 1985) (interpreting "willfulness" under § 605 as defined in *TransWorld Airlines*) For purposes of §

4

605, Courts have found conduct "willful" where there were repeated violations over a period of time, or where there was a sophisticated knowledge of the satellite programming industry and violation of the statutes which regulate it. *See, e.g., Cable/Home Communication Corp v. Network Prod.*, 902 F.2d 829, 851 (11th Cir. 1990); *Home Box Office v. Champs of New Haven, Inc.*, 837 F. Supp. 480, 484 (D. Conn. 1993).

Here, although Plaintiff asks for maximum damages, the Court finds that awarding the highest statutory damages is inappropriate as to all Defendants. Plaintiff has provided no documentation or other competent evidence showing any significant actual damages or, conversely, substantial unlawful monetary gains by Defendants – except as to Defendant Dahlberg, whose establishment collected a cover charge from patrons. The caselaw suggests that under similar circumstances and in the absence of egregious violations, courts have refused to award the highest possible damages. *See, e.g., Home Box Office*, 837 F. Supp. at 484 (holding that under the Communications Act and Copyright Act, maximum statutory damages in amount of $250,000 imposed on owner of sports bar was excessive and would be reduced to $10,000 where there were no allegations of repeated violations, substantial gains by defendants or significant actual damages to the plaintiff); *see also Joe Hand Promotions v. Burg's Lounge*, 955 F. Supp. 42 (E.D. Pa. 1997) (holding that in the absence of evidence suggesting especially egregious circumstances under which tavern owners exhibited copyright broadcast of heavyweight boxing fight without authorization, $20,000 damage award was unwarranted). Inasmuch as the amount of statutory damages under § 605 is discretionary, the Court finds that the appropriate amount of statutory damages under the circumstances presented is $5,000 as to each Defendant.

Plaintiff also seeks damages based on Defendants' "committ[ing] [the alleged act] willfully and for purposes of direct or indirect commercial advantage or private financial gain," pursuant to § 605(e)(3)(C)(ii)   Given that all Defendants exhibited the boxing match in commercial establishments, they were sure to benefit financially from the unauthorized interception of the satellite transmission   Moreover, the Court finds that an award under this section of the statute is warranted insofar as Defendants acted in disregard or with indifference to the governing laws   While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that there must have been some knowledge on the part of Defendants that such interception could not be had for free   The Court, however, is unwilling to make an award at the statutory maximum of $100,000   All three Defendants run small establishments and, as noted above, likely are not familiar with statutory requirements of satellite broadcasting   *Cf. Network Prod.*, 902 F 2d at 851 (awarding $20,000 for multiple, willful violations of Copyright Act and $110,000 for separate willful violations of the Communications Act where the defendant flagrantly violated statutory requirements with which he was familiar given his knowledge of the industry)   In this case, the Court is of the opinion that an award of $10,000 will further the goal of deterrence without putting Defendants out of business   As to Defendant Dahlberg, however, who benefitted from the enterprise more significantly than co-Defendants by collecting from patrons a $10 00 entree fee, the Court is of the opinion that an award of $25,000 is appropriate

Plaintiff also seeks $1,500 per Defendant as reasonable attorney fees the total sum based on an hourly rate of $150   Additionally, Plaintiff seeks to recover the costs of bringing suit, which include a $50 filing fee and a $160 process-server fee for each Defendant

6

The Court finds this accounting reasonable and is of the opinion that Plaintiff is entitled to such an award. *See, e.g., Time Warner Cable of New York City v. Olmo*, 977 F. Supp. 585 (E.D.N.Y. 1997) (awarding prevailing party, a cable television operator, reasonable costs and attorney fees in the amount of $1,586 based on hourly rates ranging from $190 to $110). Plaintiff also requests pre-judgment interest at the rate of six percent per annum as compensation for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment. Plaintiff finally requests post-judgment interest at the legal rate in effect at the time of the judgment. The Court is of the opinion that Plaintiff's request is reasonable and agrees to the proposed award. *See Williams v. Trader Pub. Co.*, 218 F.3d 481 (5th Cir. 2000) (holding that "[a] district court has discretion to impose a pre- and post-judgment interest award to make a plaintiff whole").

Accordingly, after due consideration, the Court is of the opinion that the following orders should enter:

**IT IS HEREBY ORDERED** that Plaintiff Prostar's Motion for Default Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff recover from Defendant Javier Valles individually and doing business as Bobby's Place as well as Bobby's Place (1) statutory damages in the amount of $5,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) additional damages in the amount of $10,000 for "committ[ing] [the alleged act] willfully and for purposes of direct or indirect commercial advantage or private financial gain," pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); (3) interest thereon at the rate of 6 percent per annum on the sum of $15,000 from the 6th day of December, 1997, to the 8th day of February, 2001, in the amount of $2,850;

(4) $1,500 as reasonable attorney's fees;  (5) court costs related to prosecution of this matter totaling $210;  and (6) post-judgment interest thereon at the rate of 6 052 percent per annum

**IT IS FURTHER ORDERED** that Plaintiff shall recover from Defendants Feliciano Valdez and Maria Rivera, individually and doing business as Jockey Lounge, as well as Jockey Lounge (1) statutory damages in the amount of $5,000 pursuant to 47 U S C § 605(e)(3)(C)(i)(II); (2) additional damages in the amount of $10,000 for "committ[ing] [the alleged act] willfully and for purposes of direct or indirect commercial advantage or private financial gain," pursuant to 47 U S C § 605(e)(3)(C)(ii); (3) interest thereon at the rate of 6 percent per annum on the sum of $15,000 from the 6th day of December, 1997, to the 8th day of February, 2001, in the amount of $2,850; (4) $1,500 as reasonable attorney's fees;  (5) court costs related to prosecution of this matter totaling $210;  and (6) post-judgment interest thereon at the rate of 6 052 percent per annum

**IT IS FURTHER ORDERED** that Plaintiff shall recover from Defendant William E. Dahlberg, individually, and as an officer, director, shareholder and/or principal of Yellow Rose Restaurants, Inc , doing business as The Mine Shaft, as well as Yellow Rose Restaurants, Inc., doing business as The Mine Shaft (1) statutory damages in the amount of $5,000 pursuant to 47 U S C § 605(e)(3)(C)(i)(II); (2) additional damages in the amount of $25,000 for "committ[ing] [the alleged act] willfully and for purposes of direct or indirect commercial advantage or private financial gain," pursuant to 47 U S C § 605(e)(3)(C)(ii); (3) interest thereon at the rate of 6 percent per annum on the sum of $35,000 from the 6th day of December, 1997, to the 8th day of February, 2001, in the amount of $5700; (4) $1,500 as

8

reasonable attorney's fees; (5) court costs related to prosecution of this matter totaling $210; and (6) post-judgment interest thereon at the rate of 6.052 percent per annum

**IT IS FURTHER ORDERED** that the pretrial conference and default hearing set for February 15, 2001, is hereby **VACATED**

**IT IS FINALLY ORDERED** that Plaintiff's "Motion for Permission to Appear Telephonically at the Pretrial Conference and Default Hearing Scheduled for February 15, 2001" is **DENIED** as moot

SIGNED this 8th day of February 2001

_____
THE HONORABLE DAVID BRIONES
UNITED STATES DISTRICT JUDGE




IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ENTERTAINMENT BY J&J, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:01CV-1803-R |
| § | |
| DAVID CANTU, Individually and § | |
| d/b/a R&R SPORTS CLUB, § | |
| § | |
| Defendants. § | |

## FINAL JUDGMENT

After Final Pretrial Conference, this action came on for trial before the Court, Honorable Jerry Buchmeyer, United States District Judge, presiding, and the issues having been duly tried and a decision having been duly rendered,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

1. That Judgment be entered in favor of Plaintiff Entertainment by J&J, Inc. ("Plaintiff") and against Defendant David Cantu, Individually and d/b/a R&R Sports Club ("Defendant");

2. That Plaintiff recover statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendant in the amount of Ten Thousand Dollars ($10,000.00).

3. That Plaintiff recover additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendant in the amount of One Hundred Thousand Dollars ($100,000.00);[1] and

---

[1] The Court finds that Defendant's actions were willful and for purposes of direct or indirect commercial advantage or private financial gain. The Court also concludes that Defendant is a "multiple offender" of the Communications Act. In light of the foregoing, the losses incurred by Plaintiff and the Communications Act's intent to punish and deter unauthorized interception, receipt and broadcasting of closed-circuit programs, these additional damages are warranted in this action.

FINAL JUDGMENT                                                                              Page 1
n:/010901-115/pdg/default-judgment

4. That Plaintiff recover attorneys' fees from Defendant in the amount of Thirty-six Thousand Six Hundred Sixty-six Dollars ($36,666.00) for prosecution of this case through this Judgment.[2]

5. The Court also awards post-judgment interest on the amounts awarded herein at an annual rate of 4.25% from the date of this Judgment until paid.

Dated this 10 day of December, 2002.



HON. JERRY BUCHMEYER
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[2] The Court takes judicial notice that an award of attorneys' fees in the amount of one-third (1/3) of the damages awarded herein is reasonable and necessary for this type of action.

FINAL JUDGMENT                                                                                           Page 2
n:/010901-115/pdg/default-judgment