IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

FEB 23 2005

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| GARDEN CITY BOXING CLUB, INC. § § Plaintiff, § § v. § § JOANN CRISTINA ZEPEDA, individually § and d/b/a LOS INDIOS SPORTS BAR § a/k/a LOS INDIOS BAR; and EDUARDO § ZEPEDA, JR., individually and d/b/a § LOS INDIOS SPORTS BAR § a/k/a LOS INDIOS BAR, § § Defendants. § | Civil Action B-04-145 |

## MEMORANDUM AND ORDER

BE IT REMEMBERED that on February 18, 2005, the Court considered plaintiff Garden City Boxing Club, Inc.'s ("plaintiff") Motion for Final Default Judgment. Dkt. No. 9. On August 18, 2004, plaintiff filed suit against defendants alleging violations of the Federal Communication Act ("FCA"). Dkt. No. 1. On October 25, plaintiff filed return of service receipts demonstrating that personal service of the defendants occurred on September 15. Dkt. Nos. 5, 6, & 7. Plaintiff, on December 6, applied to the Clerk of Court for entry of default and motioned this Court for default judgment against the defendants. Dkt. Nos. 8 & 9. The Clerk entered default against the defendants on December 6. Dkt. No. 11. After reviewing the briefs, statutes, and relevant case law, the Court hereby **GRANTS** plaintiff's motion for default judgment. Dkt. No. 9.

I. **Standard of Review**

The "'defendant, by his default, admits [as true] the plaintiff's well-pleaded allegations of fact,'" except for those involving the amount of damages. Jackson v. FIE

1

Corp., 302 F.3d 515, 524, 525 n. 29 (5th Cir. 2002) (quoting <u>Nishimatsu Constr. Co. v. Houston Nat'l Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975)); <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 108 (2d Cir. 1997); <u>Caterpillar Fin. Servs.</u>, 218 F.R.D. at 148; <u>Joe Hand Promotions, Inc. v. Hernandez</u>, 2004 WL 1488110, at *2 (S.D.N.Y. 2004).

## II.   Factual Background

The plaintiff's well pled factual allegations provide the following facts. Plaintiff is a California corporation with its principal place of business located in Campbell, California. <u>Plaintiff's Complaint</u> ("PC"), Dkt. No. 1, at p.1. Defendants Joann Cristina Zepeda and Eduardo Zepeda, Jr. (collectively "defendants") are the owners/managers of Los Indios Sports Bar a/k/a Los Indios Bar, located in Laredo, Texas. <u>Id.</u> at p.2 & Exhibit A-2.

The championship boxing match between Fernando Vargas and Oscar De La Hoya, held on September 14, 2002,[1] was broadcast through closed-circuit telecast[2] and was not intended for the general public. <u>Id.</u> at pp.2-3. By agreement,[3] plaintiff was named the exclusive broadcast licensee and authorized to sub-license the telecast to commercial establishments such as theaters, arenas, clubs, bars, lounges, restaurants, and the like throughout Texas. <u>Id.</u> at p.3. The only way an establishment could legally obtain transmission of the telecast was by contracting with and paying a licensing fee to the plaintiff. <u>Id.</u> In order to safeguard against unauthorized interception, the telecast was "electronically coded or 'scrambled'" requiring particular decoding equipment to be viewed clearly. <u>Id.</u> Any establishment that contracted with the plaintiff was provided the necessary decoding equipment. <u>Id.</u>

On September 14, 2002, the defendants exhibited the event to the patrons of the

---

[1] The authorized telecast included the undercard and preliminary bouts. <u>PC</u>, at p.2; <u>Plaintiff's Default Judgment Motion</u> ("PDJM"), Dkt. No. 9, at Exhibit A-1.

[2] The transmission of the event occurred via satellite. <u>PDJM</u>, Dkt. No. 9, at p.6.

[3] Top Rank, Inc. and New Jersey Sports Production, Inc. d/b/a Main Events, were the co-promoters of the event. <u>PDJM</u>, Dkt. No. 9, at Exhibit A-1.

Los Indios Bar.[4] Id. at p.4. However, because the defendants failed to contract with or pay a license fee to the plaintiff, this showing was unauthorized. Id. at pp.3-4.

### III. Discussion

#### A. Default Judgment

The process of entering default against an unresponsive party is outlined in Rule 55 of the Federal Rules of Civil Procedure ("FRCP"). "When a party against whom a judgment . . . is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." FRCP 55(a); New York Life Ins. Co. v. Brown, 84 F.3d 137, 141 (5th Cir. 1996); Mayflower Transit, L.L.C. v. Troutt, 332 F. Supp. 2d 971, 974 (W.D.Tex. 2004). Subsequent to the clerk's *entry of default*, a plaintiff may motion the Court for a *default judgment*. FRCP 55(a)–(b)(2); New York Life Ins. Co., 84 F.3d at 141; Mayflower Transit, 332 F. Supp. 2d at 974.

Entry of default judgment is not a matter of right for the moving party. Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001). "Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n, 874 F.2d 274, 276 (5th Cir. 1989) (citations omitted). Nonetheless, default judgments "allow the courts to manage their dockets efficiently and effectively." Caterpillar Fin. Servs. v. Lindsey, 218 F.R.D. 145, 147 (S.D.Tex. 2003) (citing Merril Lynch Mortgage Corp. v. Marayan, 908 F.2d 246, 253 (7th Cir. 1990)). Accordingly, the decision to enter default judgment lies within the sound discretion of the Court. Lindsey v. Price Corp., 161 F.3d 886, 893 (5th Cir. 1998).

After examining the return of service receipts, the Court finds that the defendants were properly served with the complaint on September 15, 2004. Dkt. Nos. 5, 6, & 7. Furthermore, having failed to answer "or otherwise defend" the plaintiff's action, the Clerk of Court correctly entered default against the defendants. Dkt. No. 11. The Court notes that plaintiff's counsel's affidavit establishes that the defendants are neither infants,

---

[4]A hired investigator observed the showing of the fight inside the Los Indios Bar on the night in question. PDJM, Dkt. No. 9, at Exhibit A-2.

incompetent persons, or on active duty in the Military Service of the United States of America. Plaintiff's Motion for Entry of Default, Dkt. No. 8, at Exhibit 1; see FRCP 55(b)(2). Prior to entering default judgment, however, the Court must determine whether the plaintiff has alleged sufficient facts to state a claim for relief in the Complaint. Garden City Boxing Club, Inc. v. Giambra, 2004 WL 1698633, at *1 (W.D.N.Y. 2004).

**B.     Federal Communications Act**

Plaintiff claims defendants violated section 605 of Title 47 of the United States Code.[5] "As an amendment and supplement to the FCA, 'Congress enacted the Cable Communications Policy Act of 1984 to address a problem which is increasingly plaguing the cable industry – the theft of cable service.'" Entertainment by J&J, Inc. v. Al-Waha Enters., Inc., 219 F. Supp. 2d 769, 773 (S.D.Tex. 2002) (quoting Nat'l Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 911 (6th Cir. 2001) (citation omitted)). One of the primary objectives of section 605 "'was to discourage the theft of cable services.'" Al-Waha Enters., Inc., 219 F. Supp. 2d at 773 (quoting Prostar v. Massachi, 239 F.3d 669, 673 (5th Cir. 2001)); Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc., 98 F. Supp. 2d 958, 961 (N.D.Ill. 2000).

Section 605(a) generally prohibits any unauthorized publication of an intercepted

---

[5]Plaintiff additionally sued defendants under 47 U.S.C. § 553. However, Courts have uniformly held that when seeking recovery pursuant to both section 553 and section 605, a plaintiff may only recover against the defendant under one of the provisions. See, e.g., Entertainment by J&J, Inc. c. Nina's Restaurant & Catering, 2002 WL 1000286, at * 2 (S.D.N.Y. 2002) ("When a court determines that a defendant's conduct has violated both § 605 and § 503 . . ., a plaintiff may recover damages under only one of those sections." (citing Time Warner Cable v. Barnes, 13 F. Supp. 2d 543, 548 (S.D.N.Y. 1998)). Furthermore, "[a] majority of courts that have dealt with a violation of both sections . . . award damages only under Section 605 because that provision allows for greater recovery by plaintiffs." Al-Waha Enters., Inc., 219 F. Supp. 2d at 775 (citing cases); see also Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1007 (2d Cir. 1993) (finding that if defendant violates both § 553 and § 605 that plaintiff was entitled to damages under the latter section). Because the Court concludes that defendants' actions constitute a violation of section 605, the Court need not address plaintiff's section 553 claim. Therefore, any further discussion of the 553 claim is omitted.

4

wire or radio communication, including satellite cable programming. Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1007 (2d Cir. 1993); Kingvision Pay-Per-View, Ltd. v. Valles, 2001 WL 682205, at *2 (W.D.Tex. 2001). In relevant part, section 605(a) provides:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto....

47 U.S.C. § 605(a). The statute's protection extends to satellite transmissions as well. Top Rank Inc. v. Tacos Mexicanos, 2003 WL 21143072, at *3 (E.D.N.Y. 2003); Valles, 2001 WL 682205, at *2 (citing United States v. Herring, 933 F.2d 932, 937 (11th Cir. 1991)); Googies Luncheonette, Inc., 77 F. Supp. 2d at 488-89. "Any person aggrieved" pursuant to the statute is provided a civil cause of a action. 47 U.S.C. § 605(e)(3)(A). Importantly, "any person aggrieved" is defined as "any person with proprietary rights in the intercepted communication . . . including *wholesale or retail distributors of satellite cable programming* . . . ." Id. at § 605(d)(6) (emphasis added).

The Court finds that defendants' showing of the Vargas/De La Hoya fight at the Los Indios Bar on September 14, 2002, violates § 605(a). The license agreement confirms that plaintiff had a propriety interest in the telecast since it was the exclusive authorized licensee of the event. PDJM, Dkt. No. 9, at Exhibit A-1. The satellite transmission of the fight was a communication protected by § 605(a). The defendants, by failing to respond, have admitted that they: (1) own/manage the Los Indios Bar; (2) did not contract with the plaintiff or any of its agents to obtain the rights to the telecast; and (3) were not authorized to intercept, receive or transmit the telecast. PC, Dkt. No. 1, pp.2–4. Therefore, because the defendants failed to contract with or pay a fee to the plaintiff's, the showing violated § 605(a). Lastly, the plaintiff was clearly an "aggrieved person" under § 605(a). The Court's

ruling is consistent with the multitude of recent cases dealing with similar facts.[6] Accordingly, because plaintiff has properly alleged and proved a violation of § 605, the Court will grant its motion for entry of default judgment.

### C.   Damages Discussion

If the plaintiff's motion for default judgment seeks a "liquidated sum or one capable of mathematical calculation," the Court need not hold an evidentiary hearing. James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993) (citing United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979)).  On the other hand, unliquidated damages are generally not awarded absent such a hearing.  Id.  This Court, however, is accorded "wide latitude" in determining the need to hold a hearing.  Id.  Because the plaintiff has provided sufficient evidence in the form of supporting documents and affidavits, the Court concludes that a hearing on damages is unnecessary.

Pursuant to the statute, an "aggrieved person" may elect to either recover actual damages or "an award of statutory damages for each violation . . . ." 47 U.S.C. § 605(e)(3)(C)(i)(I)–(II). Here, the plaintiff has requested statutory damages. PDJM, Dkt. No. 9, at p.10. This remedy allows a plaintiff to recover "a sum not less than $1,000 or more than $10,000 . . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II) (hereinafter referred to as "statutory

---

[6]See, e.g., Giambra, 2004 WL 1698633, at *1; Kingvision Pay-Per-View Ltd. v. Cardona, 2004 WL 1490224, at *1 (S.D.N.Y. 2004); Hernandez, 2004 WL 1488110, at *2; Kingvision Pay-Per-View Ltd. v. Olivares, 2004 WL 744226, at *1 (S.D.N.Y. 2004); Time Warner Cable of New York City v. Sanchez, 2003 WL 21744089, at *1 (S.D.N.Y. 2003); Kingvision Pay-Per-View, Ltd. v. Recio, 2003 WL 21383826, at *1 (S.D.N.Y. 2003); Joe Hand Promotions, Inc. v. Dailey, 2003 WL 1342998, at *1 (N.D.Cal. 2003); Tacos Mexicanos, 2003 WL 21143072, at *1; Kingvision Pay-Per-View, Ltd. v. Spice Restaurant & Lounge, Inc., 244 F. Supp. 2d 1173 (D.Kan. 2003); Kingvision Pay-Per-View, Ltd. v. Ortega, 2002 WL 31855367, at *1 (N.D.Cal. 2002); Universal Sports Network, Inc. v. Jimenez, 2002 WL 31109707, at *1 (N.D.Cal. 2002); Al-Waha Enterprises, Inc., 219 F. Supp. 2d at 769; Nina's Restaurant & Catering, 2002 WL 1000286, at *1; Entertainment by J&J, Inc. v. Gridiron, Inc., 232 F. Supp. 2d 679 (S.D.W.Va. 2001); Kingvision Pay-Per-View, Ltd. v. Admiral's Anchor, Inc. No. 2, 172 F. Supp. 2d 810 (S.D.W.Va. 2001); Valles, 2001 WL 682205, at *1; Googies Luncheonette, Inc., 77 F. Supp. 2d at 485; Tacos Rapidos Restaurant, 988 F. Supp. at 107.

damages"). Importantly, if "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may enhance the award of damages "by an amount of not more than $100,000 . . . ." Id. at § 605(e)(3)(C)(ii) (hereinafter referred to as "enhancement damages"). The discretion in determining these awards remains with the Court. Id. at §§ 605(e)(3)(C)(ii),(i)(II); Al-Waha Enterprises, Inc., 219 F. Supp. 2d at 775-76; Tacos Mexicanos, 2003 WL 21143072, at *4. If, however, the Court finds that defendant's actions violate § 605, the award of reasonable attorney's fees and costs is mandatory. 47 U.S.C. § 605(e)(3)(B)(iii) ("The court – *shall* direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party . . . ." (emphasis added)); Taco Rapido Restaurant, 988 F. Supp. at 112.

### 1. Statutory Damages

Under the statutory damages provision, the plaintiff seeks the maximum, $10,000. PDJM, Dkt. No. 9, at p.10. On the night in question, the plaintiff's investigator observed 20 individuals inside the Los Indios Bar watching the fight on 1 television. Id. at Exhibit A-2. This Court was unable to find, nor did the plaintiff provide, a single decision involving a similar number of spectators and an award anywhere near the statutory maximum. See, e.g., Googies Luncheonette, Inc., 77 F. Supp. 2d at 490 (awarding $3,000 in statutory damages for 60 patrons). Furthermore, plaintiff has provided no evidence concerning "any significant actual damages or conversely, substantial unlawful monetary gains by the Defendants," or any other egregious factors deserving of the statutory maximum. Valles, 2001 WL 682205, at *2. Accordingly, the Court will not acquiesce to plaintiff's request.

Because "an award of damages pursuant to Section 605 turns in part on the commercial gain derived from illegal cable broadcasts, courts have assessed damages based upon the number of patrons in the establishment at the time of the broadcast." Tacos Mexicanos, 2003 WL 21143072, at *4.[7] On the night of the fight, as noted above,

---

[7]Although some Courts do not follow the per patron analysis, but rather simply award a flat sum, see, e.g., Kingvision Pay-per-view, Ltd. v. Jasper Grovery, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (awarding flat sum of $5,000), this seems to be an ebbing method.

7

20 individuals were present at the Los Indios Bar. PDJM, Dkt. No. 9, at Exhibit A-2. Based on that number, the Los Indios Bar would have been charged a $1,000 license fee.[8] The Court, however, does not believe that requiring the defendants to simply reimburse the plaintiff without more would deter further wrongdoing. See Al-Waha Enterprises, Inc., 219 F. Supp. 2d at 776 ("The deterrence of future violations, however, is one of the objectives of the [FCA], as evidenced by the minimum award of $1,000."). Therefore, the licensing fee is doubled and the Court finds that plaintiff is entitled to $2,000 in statutory damages pursuant to Section 605(e)(3)(C)(i)(II). Cardona, 2004 WL 1490224, at *3. (awarding $2,000 in statutory damages where establishment exhibited intercepted programming to 20 patrons).

### 2.     Enhancement Damages

If the defendant's violation of section 605 "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may enhance the award of damages "by an amount of not more than $100,000 . . . ." 47 U.S.C. § 605(e)(3)(C)(ii). The plaintiff argues that an enhancement of $50,000 is appropriate. PDJM, Dkt. No. 9, at pp.18, 22. Although it finds that the defendants' actions satisfy the enhancement requirements, the Court disagrees with the plaintiff's requested amount.

The Supreme Court has defined "willfulness" as the "disregard for the governing statute and indifference for its requirements." TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111, 126-27 (1985). In the context of section 605, conduct has been found "willful" "where there were repeated violations over a period of time, or where there was a sophisticated knowledge of the satellite programming industry and violation of the states

---

[8]The plaintiff normally calculates the license fee to charge the establishment by multiplying the maximum fire code occupancy by a factor 20. PDJM, Dkt. No. 9, at Exhibit A. Therefore, for example, in an establishment where the maximum fire code occupancy is 100 individuals, the establishment can expect to pay $2,000 for the right to telecast the fight. There is, however, a minimum $1,000 license fee. Id. There is nothing in the record that provides the Los Indios Bar's maximum fire code occupancy. The only guidepost is the fact that 20 individuals were present the evening of the fight. Employing this figure in the calculation would result in a $1,000 license fee.

which regulate it." <u>Valles</u>, 2001 WL 682205, at *2. However, because of "the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance, . . . courts have held conduct such" as the defendants in this case to be willful and for the purpose of commercial advantage or private financial gain. <u>Al-Waha Enterprises, Inc.</u>, 219 F. Supp. 2d at 776 (citing <u>Admiral's Anchor, Inc. No. 2</u>, 172 F. Supp. 2d at 812; <u>Googies Luncheonette, Inc.</u>, 77 F. Supp. 2d at 490; <u>Tacos Rapido Restaurant</u>, 988 F. Supp. at 111); <u>see also</u> <u>Recio</u>, 2003 WL 21383826, at *5 ("Intercepting the cable signal and broadcasting the match at their commercial establishments evidences a disregard for § 605(a)."); <u>Googies Luncheonette, Inc.</u>, 77 F. Supp. 2d at 490 ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems. . . . [I]n order for [defendant] to receive the closed circuit broadcast, it had to have engaged in some deliberate act, such as using an authorized decoder or altering the cable service in some way, so as to receive and view the scrambled transmission." (citation omitted)).

Here, the defendants exhibited the telecast to the patrons of the Los Indios Bar on the evening of September 14, 2002. Due to the scrambled nature of the signal and the fact that the defendants displayed the fight in their commercial establishment, the Court finds that defendants acted willfully and for commercial advantage. <u>Valles</u>, 2001 WL 682205, at *3. Accordingly, the Court finds that the plaintiff is allowed an enhancement in damages.

As in the calculation of the statutory damages, the plaintiff has failed to provide any evidence establishing the egregious nature of the defendants' wrongdoing. Furthermore, considering the fact that only 20 patrons were present and the lack of evidence demonstrating that the defendants repeatedly committed such violations, the Court does not conclude that an enhancement in the middle of the statute's offered range, as suggested by the plaintiff, is warranted. The Court, however, does find that an enhancement of $10,000, representing the lower end of the statute's offered range, is warranted. The Court bases its decision on results in factually similar cases and in the interest of deterrence. <u>See, e.g.</u>, <u>Cardona</u>, 2004 WL 1490224, at *4. (awarding $10,000 in enhancement damages where establishment exhibited intercepted programming to 20

patrons). But see Olivares, 2004 WL 744226, at *1 (awarding $25,000 in enhancement damages for 15-21 patrons at defendant's establishment); Recio, 2003 WL 21383826, at *4-5 (awarding $2,000 in enhancement damages for 21 patrons).

### 3. Attorney's Fees

As noted above, upon a finding that the defendant violated § 605, the award of reasonable attorney's fees and costs is mandatory. 47 U.S.C. § 605(e)(3)(B)(iii). Here, plaintiff requests an award of one third of the statutory and enhancement damages awarded to the plaintiff. In the alternative, the plaintiff requests the attorney's fees paid on an hourly basis. Although a few Courts have allowed for a one third attorney's fees award in § 605 litigation, see, e.g., Entertainment by J&J, Inc. v. Nuno, 2001 WL 896941, at *1 (N.D.Tex. 2001), a vast majority have based this figure on a hourly basis, see *supra* footnote 6. The plaintiff's attorney has supplied the Court with an affidavit stating that he expended a total of 6 hours in preparation of the case, and requests a rate of $250 per hour, for a total of $1,500.[9] PDJM, Dkt. No. 9, at Exhibit B. Because 6 hours of preparation and a $250 per hour rate are reasonable and were necessarily incurred, the Court awards the plaintiff $1,500 in attorney's fees.

The plaintiff's attorney further "seeks a contingent award of attorney's fees in the event certain post-trial, pre-appeal and appellate services . . . are rendered and do not lead to the . . . reversal . . . ." Id. at p.25. The Court will not award these additional fees at this time. If these fees are incurred at a later date, the plaintiff may submit a request to the Court. National Satellite Sports, Inc. v. Garcia, 2003 WL 21448375, at *3 (N.D.Tex. 2003) ("[Plaintiff] may apply for such an award if and when such fees and costs are incurred. State courts make such awards because state trial courts are the tribunals that make factual findings and they must award post-trial court and appellate fees before they lose their jurisdiction to do so. Federal district courts do not operate under similar jurisdictional restraints. Therefore, this court uniformly denies post-trial court appellate fee requests,

---

[9]Although the Court accepts the plaintiff's attorney's averment that 6 hours at $250 per hour is reasonable, the Court does not adopt the plaintiff's attorney's calculation of his fees.

without prejudice to awarding them on a subsequent application that is based on the actual fees incurred.").

Plaintiff has failed to provide any evidence or calculation of costs in its motion for Default Judgment. Accordingly, the Court shall not award costs to the plaintiff.

### 4. Interest

The plaintiff also requests a post-judgment interest rate of 5.00%. "A district court has discretion to impose a . . . post-judgment interest award to make a plaintiff whole." Williams v. Trader Pub. Co., 218 F.3d 481, 488 (5th Cir. 2000). Courts have routinely awarded post-judgment interest in analogous cases. See, e.g., Recio, 2003 WL 21383826, at *6 (citing Valles, 2001 WL 682205, at *3). Therefore, the Court will grant the plaintiff's request. However, rather than 5.00%, this Court will award an interest rate in accordance with 28 U.S.C. §1961. See http://www.txs.uscourts.gov/interest/interest.htm.

## IV. Conclusion and Order

Premises considered, the Court hereby **GRANTS** the plaintiff's request for entry of default judgment against the defendants. The Court **AWARDS** the plaintiff: (1) $2,000 in statutory damages; (2) $10,000 in enhancement damages; and (3) $1,500 in attorney's fees. A post-judgment interest rate of 2.96% [handwritten, replacing struck-through 2.95%] shall be applied to the judgment until paid.

DONE at Brownsville, Texas, this 18 day of February, 2005.

Hilda G. Tagle
United States District Judge